IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

No. 09-4617
_____

UNITED STATES OF AMERICA,
Appellee,

v.

DAVID WILBERT SHANTON, SR.,
Appellant.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

(THE HONORABLE CATHERINE C. BLAKE,
UNITED STATES DISTRICT JUDGE)
_____

APPELLANT'S SUPPLEMENTAL REPLY BRIEF
IN LIGHT OF *WILLIAMS V. ILLINOIS*
_____

Respectfully submitted,

JAMES WYDA
Federal Public Defender

LAKEYTRIA W. FELDER
Assistant Federal Public Defender
6411 Ivy Lane - Suite 710
Greenbelt, Maryland 20770
(301) 344-0600

Counsel for Appellant

# TABLE OF CONTENTS

**Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  *Williams, Melendez-Diaz,* and *Bullcoming* All Make Clear that, Under the Confrontation Clause, The Government Should Not Have Been Permitted to Introduce Testimony of A Supervising DNA Analyst Who Neither Performed Nor Observed Any Part of the DNA Testing in Mr. Shanton's Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Admission of the DNA Evidence Was Not Harmless Beyond a Reasonable Doubt - The Government Conceded That The DNA Was "Helpful" In Linking Mr. Shanton to the Robberies . . . . . . . . . . . . . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

                                                                                 **Page(s)**

**Cases**

*Chapman v. California*, 386 U.S. 18 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fahy v. Connecticut*, 375 U.S. 85 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009) . . . . . . . . . . . . . . . 2, 4, 5

*United States v. Bonner*, 648 F.3d 209 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Johnson*, 587 F.3d 625 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . 5

*Williams v. Illinois*, 132 S. Ct. 2221 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

No. 09-4617
_____

UNITED STATES OF AMERICA,
Appellee,

v.

DAVID WILBERT SHANTON, SR.,
Appellant.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

(THE HONORABLE CATHERINE C. BLAKE,
UNITED STATES DISTRICT JUDGE)
_____

APPELLANT'S SUPPLEMENTAL REPLY BRIEF
IN LIGHT OF *WILLIAMS V. ILLINOIS*
_____

# INTRODUCTION

In its supplemental brief, the government steadfastly clings to *Summers*, as dispositive, though the Supreme Court did not endorse *Summers*' analysis in resolving this case – as evidenced by the Supreme Court's grant of certiorari and

remand.[1]    Mr. Shanton files this  reply to address  the government's misapprehensions about the Confrontation Clause.  As set forth in the Mr. Shanton's supplemental briefing, *Williams v. Illinois* supports his position that the government should not have been permitted to introduce  DNA test results through a sole witness who neither observed nor actually participated in any part of the actual testing.  The introduction of that evidence was not harmless beyond a reasonable doubt.

## ARGUMENT

**I.     *Williams*, *Melendez-Diaz*, and *Bullcoming* All Make Clear that, Under the Confrontation Clause, The Government Should Not Have Been Permitted to Introduce Testimony of A Supervising DNA Analyst Who Neither Performed Nor Observed Any Part of the DNA Testing in Mr. Shanton's Case**

The Government's analysis of the Confrontation Clause is untethered from the Supreme Court's precedent and the record in this case. Had the Supreme Court endorsed the analysis in  *Summers*, it would have denied certiorari in Shanton  as well. It did not.  *Williams* and prior Supreme Court precedent favors Mr. Shanton's position and his conviction should be vacated.  In its supplemental briefing, the government concedes that, Justice Thomas' concurring opinion in *Williams* does not

---

[1] As noted in the supplemental briefing, both *Summers'* and *Shanton's* petition for certiorari were filed on the same day. The Supreme Court denied cert in *Summers*, but granted cert in *Shanton*. The difference may be attributed to harmless error analysis.

represent a narrower ground of the plurality; and thus, is not controlling. Gov't Br. at 6. However, in further discussion of *Williams*, the government gives undue authoritative weight to Justice Alito's opinion to support its contention that there was no Confrontation Clause error. Gov't Br. at 10. The government's reliance is misplaced and does not advance its argument. First, Justice Alito's opinion did not command a majority; and thus, it does not create a new rule that "basis evidence" relied on by a testifying expert is not hearsay because it is not offered for the truth of the matter. Second, the fact that Luttman had partial involvement in receiving the DNA samples and delegating the review to her subordinates– is not sufficient to overcome her reliance on other analysts' "bench work" and "wet chemistry" to reach her opinion. The fact remains that Ms. Luttman did not personally extract, analyze, and create the DNA profile. She could not testify about how each analyst performed the testing in this case because she did not actually observe the process. Ms. Luttman could only assume the accuracy and validity of the other analysts' work in order to reach her opinion – an opinion which was inextricably tied to the underlying work product. That Shanton's DNA profile was derived from the gum was established by the forensic analysts' work and had to be accepted for its truth, in order for the government to use the DNA evidence to link Shanton to the robbery. Luttman's opinion necessarily depended on the truth of the analysts' assertions that Shanton's

DNA profile was extracted from the gum. *Williams*, consistent with *Melendez-Diaz* and *Bullcoming*, makes clear that non-testifying analysts' statements created for the sole purpose of producing evidence for a criminal prosecution constitutes testimonial statements within the meaning of the Confrontation Clause.

The government also complains that Mr. Shanton failed to address *United States v. Johnson*, 587 F.3d 625 (4th Cir. 2009), a case that the Court relied on in *Summers*. Gov't Br. at 14. *Johnson*, however, is factually and legally distinguishable from this case. *Johnson* concerned the use of experts to decipher code words used in a drug conspiracy case. *Id*. at 635-636. The *Johnson* experts relied on their general knowledge and experience in narcotics investigations to determine what the code words meant in the context of that case. *Id*. The court noted that the experts' independent judgment and specialized understanding was "the product of the accumulation of experience over many years of investigation of narcotics organizations and contacts with the informants and witnesses who operate within them." *Id*. In this case, Ms. Luttman's testimony focused on the specific, unique DNA profile of David Shanton, Sr. which had been developed based on other analysts' work. Her judgment was not derived from solely general knowledge and experience of DNA profiles — she had to rely on the specific DNA testing and analysis produced by other non-testifying analysts. Ms. Luttman was a conduit for

4

those analysts' findings and conclusions. Because her opinion depended on their work and conclusions, her testimony was not limited to merely her own independent conclusions. *See United States v. Mejia*, 545 F.3d 179, 198-99 (2d Cir. 2008). Moreover, forensic testing and evidence is viewed in a different light than other evidence. In *United States v. Bonner*, 648 F.3d 209 (4th Cir. 2011), this Court approvingly cites the Supreme Court's recognition that "forensic science is an imperfect and human endeavor, and that the Sixth Amendment's Confrontation Clause is one means of assuring accurate forensic analysis." *Id.* at 215( other internal citations and quotations omitted). Given the process and pitfalls involved in DNA analysis , cross-examination is particularly important because forensic evidence is not uniquely immune for the risk of manipulation. *See Melendez-Diaz*, 129 S. Ct. 2537, 2536 (2009).

As such, experts opining about colloquial expressions used in the drug trade, as in *Johnson*, is incomparable to the specific and intensive process of interpreting unique DNA profiles. Mr. Shanton's right to confrontation did not disappear simply because Ms. Luttman was designated as an expert and permitted to rely on and convey the testimonial statements of other forensic analysts. When forensic analysts' testimonial statements are presented for their truth, regardless of the conduit, the analysts become witnesses the defendant has the right to confront.

**II. Admission of the DNA Evidence Was Not Harmless Beyond a Reasonable Doubt – The Government Conceded That The DNA Was "Helpful" In Linking Mr. Shanton to the Robberies**

Under *Chapman v. California*, Confrontation Clause violations are subject to review under the harmless beyond a reasonable doubt standard. 386 U.S. 18, 24 (1967). As stated in Mr. Shanton's supplemental briefing, there is a reasonable possibility that the impermissible DNA evidence contributed to Mr. Shanton's conviction, particularly because of the weight jurors give to forensic evidence. It can not be said that the DNA evidence admitted into evidence did not contribute to Mr. Shanton's conviction.

The government admits that the DNA evidence was helpful to linking Mr. Shanton to the robberies, but contends that it was not the lynchpin in the government's case. Gov't Br. at 1, n1. The government likens this case to *Summers* in which the Court suggested that there really was no need for the DNA evidence given the testimony of the law enforcement who had identified Mr. Summers in the jacket, which was later determined to contain his DNA. In that case, the Court considered the DNA evidence merely "thin glaze" given the other overwhelming evidence against Summers.

Here, in significant contrast to *Summers*, there was no law enforcement identification of Mr. Shanton at the M&T robbery. Eyewitnesses never identified

him as the robber. Even witnesses who had hours-long contact with the unmasked robber on the day of the robbery – never identified David Shanton, Sr. Both a bank employee and police deputy described the robber as being six feet tall, weighing over 200 pounds. J.A. 62,72, 86-87. That description did not fit Mr. Shanton. The Beals, who were held in their apartment by the robbers, described the older person as being in his twenties. J.A. 140; 77. That description did not fit Mr. Shanton. The prosecution's star witness, Kevin Shanton, in exchange for testifying, had over 100 charges dropped against him and was adjudicated as a juvenile instead of an adult. The canine tracking unit never traced Mr. Shanton to the home where Kevin claimed the robbery plans were hatched. J.A. 367-371. Throughout its closing and rebuttal, the government heavily focused on the DNA evidence –arguing that the Beals may not have identified Mr. Shanton, but he was identified by the DNA from the gum that was left in the Beal's apartment. J.A. 624. The government's reliance on and repeated reference to the DNA evidence in this case is telling. With weak witness identifications, unmatched physical and age descriptions, and a highly incentivized cooperating witness – it is not surprising that the government relied on DNA evidence in this case.

Accordingly, the admission of DNA evidence against Mr. Shanton was not harmless beyond a reasonable doubt because there is a reasonable probability that the

evidence might have contributed to his conviction. *See Fahy v. Connecticut*, 375 U.S. 85, 86-87 (1963).

## **CONCLUSION**

For the reasons stated herein and those stated in the opening and supplemental briefing, Mr. Shanton respectfully requests this Court to vacate his conviction.

Respectfully submitted,

JAMES WYDA
Federal Public Defender

_____/s/_____
LaKeytria W. Felder
Assistant Federal Public Defender
Office of the Federal Public Defender
6411 Ivy Lane, Suite 710
Greenbelt, Maryland 20770
Telephone: (301) 344-0600
Facsimile:   (301) 344-0019
lakeytria_felder@fd.org

# CERTIFICATE OF COMPLIANCE

1.  This Supplemental Brief of Appellant has been prepared using WordPerfect X5 software, Times New Roman font, 14 point proportional type size.

2.  Exclusive of the table of contents, table of authorities, and certificate of service, this brief contains 8 pages and 1517 words.

I understand that a material misrepresentation can result in this Court's striking the brief and imposing sanctions. If the Court so requests, I will provide a copy of the word or line print-out.


 February 1, 2013                    /s/ LaKeytria W. Felder
Date                                 LaKeytria W. Felder
                                     Assistant Federal Public Defender

# CERTIFICATE OF SERVICE

This is to certify that the foregoing Supplemental Reply Brief of Appellant was filed electronically with the Clerk of the Court via CM/ECF, which automatically sends notice to the following registered CM/ECF user:

>Michael C. Hanlon
>Assistant United States Attorney
>Office of the United States Attorney
>36 South Charles Street - Fourth Floor
>Baltimore, Maryland 21201

on this 1st day of February, 2013.

>/s/ LaKeytria W. Felder
>Assistant Federal Public Defender